181 Cal.App.4th 966 (2010)
104 Cal. Rptr. 3d 420
THE PEOPLE, Plaintiff and Respondent,
v.
ROBERTO SANCHEZ AGUILAR, Defendant and Appellant.
No. E047830.
Court of Appeals of California, Fourth District, Division Two.
February 3, 2010.
*968 Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Jeffrey J. Koch, Deputy Attorney General, for Plaintiff and Respondent.

OPINION
RAMIREZ, P. J.
Defendant and appellant Roberto Sanchez Aguilar appeals his jury conviction for one count of first degree burglary. (Pen. Code, § 459.)[1] He argues there is insufficient evidence to support his conviction for burglary in the first degree and seeks a reduction of the conviction to burglary in the second degree. Defendant also contends the trial court erroneously and prejudicially excluded defense evidence relevant to whether the burglary was of the first or second degree.

FACTUAL AND PROCEDURAL BACKGROUND
On October 24, 2008, residents of an apartment building were temporarily relocated to a hotel because of a fire in one of the units. Apartment management allowed these residents to return to their apartments with an escort to pick up personal belongings, clothing, and any valuables they wanted to take with them to the hotel. A few days after the fire, on October 28, 2008, the victim, who lived in one of the apartments damaged by the fire, returned to retrieve some additional personal belongings. The front door of the victim's apartment unit had been boarded up, so a maintenance employee removed the boarding so the victim could access the apartment. When the victim entered his apartment, he found defendant inside. Defendant was using some of the victim's personal belongings. Other items the victim kept inside his apartment had been moved in a manner suggesting defendant intended to take them from the apartment. A sliding patio door leading to the balcony was "slightly open." Defendant was arrested and charged with first degree residential burglary in violation of section 459.[2]
After the burglary, on October 30, 2008, apartment management notified the victim in writing that he would be unable to move back into his apartment *969 and would need to be transferred to another unit in the same apartment complex. The written notice provided by apartment management states: "The structural engineer is requiring all residents to remove all their belongings from the building by Sunday, November 2, 2008." The victim testified he did not learn he would not be able to return to the apartment to live until November 1, 2008.
The jury found defendant guilty as charged. The trial court sentenced defendant to the middle term of four years in state prison.

DISCUSSION

Sufficiency of the Evidence
Defendant challenges the sufficiency of the evidence to support his conviction for first degree burglary because he believes the prosecution did not prove the victim's apartment was "inhabited" within the meaning of section 459 at the time of the burglary. He believes the evidence shows the apartment was not "inhabited" at the time of the burglary, because it was "completely destroyed" or "badly damaged" and was "no longer usable as a residence," so the victim was not permitted to return there to live.
Defendant raised this issue for the first time in a motion to dismiss prior to trial. The trial court denied the motion because it was based on testimony from the preliminary hearing, which the trial court could not consider in ruling on a motion to dismiss. The issue was considered again in connection with a pretrial motion by the prosecutor to exclude testimony by a city building inspector indicating the city considered the damaged apartment building "uninhabitable" as of the date of the fire. Defendant opposed the motion, arguing the inspector's testimony was highly relevant to the issue of habitability. The trial court ruled the issue of habitability is determined based on the point of view of the victim, so the inspector's testimony was not relevant without "some additional foundation" that the inspector was telling the victim he could not move back into the apartment. Defendant also raised the issue in a motion for a new trial, but the trial court denied the motion stating it had not changed its opinion on the issue.
"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidencethat is, evidence that is reasonable, credible, and of solid valuesuch that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (People v. Rodriguez (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].) "In deciding the sufficiency of the evidence, a reviewing court resolves neither *970 credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (People v. Young (2005) 34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].)
Under section 459, a person is guilty of burglary if he "enters any house, room, apartment . . . or other building . . . with intent to commit grand or petit larceny or any felony . . . ." "Every burglary of an inhabited dwelling house . . . is burglary of the first degree." (§ 460, subd. (a).) "All other kinds of burglary are of the second degree." (§ 460, subd. (b).) Section 459 defines "`inhabited'" to mean "currently being used for dwelling purposes, whether occupied or not."
(1) "Courts specifically have recognized that the distinction between first and second degree burglary is founded upon the perceived danger of violence and personal injury that is involved when a residence is invaded." (People v. Cruz (1996) 13 Cal.4th 764, 775-776 [55 Cal.Rptr.2d 117, 919 P.2d 731].) The distinction between first degree burglary of an inhabited dwelling and second degree burglary of an uninhabited dwelling provides "increased protection for the privacy and enjoyment of one's home. [Citation.]" (People v. Rodriguez (2000) 77 Cal.App.4th 1101, 1106 [92 Cal.Rptr.2d 236].)
The term "inhabited dwelling house" in section 459 has been interpreted broadly in order to achieve the legislative purpose of the statute. (People v. Rodriguez, supra, 77 Cal.App.4th at p. 1107.) For example, in People v. Villalobos (2006) 145 Cal.App.4th 310, 321 [51 Cal.Rptr.3d 678] (Fourth Dist., Div. Two) (Villalobos), we concluded a hotel or motel room being used for purposes of habitation is an "inhabited" dwelling under sections 459 and 460, regardless of the duration of the habitation.
(2) We agree with the trial court's view that the issue of habitability under section 459 is viewed through the eyes of the person with the possessory right to the dwelling (i.e., the alleged victim of the burglary). A structure or dwelling "is `inhabited' if it is currently being used for residential purposes, even if it is temporarily unoccupied, i.e., no person is currently present. A formerly inhabited dwelling becomes uninhabited only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling. . . . [¶] . . . [¶] . . . If the person is using the structure as a habitation when the burglary or robbery *971 occurs, his possible intent to abandon the habitation in the future does not alter its character as an inhabited dwelling." (Villalobos, supra, 145 Cal.App.4th at p. 320, citations omitted, italics added.) In addition, the Legislature has specifically rejected the view that the use of a dwelling as sleeping quarters is critical. "Rather, such use is merely one circumstance the fact finder may consider." (People v. Hernandez (1992) 9 Cal.App.4th 438, 441 [11 Cal.Rptr.2d 739] [Fourth Dist., Div. Two].)
Defendant's argument that the apartment was not "inhabited" at the time of the burglary must be rejected because it does not focus on the point of view of the victim at the time the burglary occurred. Instead, defendant attempts to focus the analysis on irrelevant factors, such as the extent of damage to the apartment building caused by the fire and the eventual decision made after the burglary not to allow defendant to continue living in the building while repairs were made.
When considered from the victim's point of view at the time of the burglary, the undisputed facts show the apartment unquestionably fell within the definition of "inhabited." The victim testified he lived in the apartment with his three sons. On October 24, 2008, a fire occurred in a nearby apartment while he was at work. The fire was already out when he arrived home, and he was only allowed back in the apartment for an hour to remove personal belongings. While he was inside the apartment, he saw smoke and water damage, but his belongings were intact. He gathered up enough clothing for about three days, as well as some other personal items, and was relocated to a hotel. He believed he would be returning to the same apartment to live once it was fixed.
While still living temporarily at the hotel, the victim went to the apartment again only a few days after the fire, on October 28, 2008, to obtain a few more personal items. A maintenance employee helped the victim access the apartment by removing some boarding. Most of the victim's belongings were still in the apartment, and he still believed he and his sons would return to the apartment to live once repairs to the building were completed. At that time, defendant was found sitting at a table inside the apartment drinking the victim's wine and wearing the victim's tennis shoes. Some clothing had been removed from the closet and piled in the living room. A scooter that the victim kept inside the apartment had also been moved, along with his son's trumpet. Items he kept inside a messenger bag had been taken out and replaced with tools and other items from the apartment.
(3) In sum, there was no evidence the victim had permanently moved out of or abandoned the apartment for dwelling purposes at the time of the burglary. Most of the victim's belongings were still inside the apartment, and *972 the victim testified he believed he would return to the apartment to live when repairs were completed. As a result, the evidence reasonably supported the jury's finding that the apartment was "inhabited" within the meaning of section 459 at the time of the burglary.
We also reject defendant's contention the apartment could not be considered "inhabited" within the meaning of the "disaster" provision in section 459, because it was so badly damaged it could not be used as a dwelling at the time of the burglary. In this regard, section 459 not only defines "inhabited" to mean "currently being used for dwelling purposes, whether occupied or not," but also provides as follows: "A house . . . or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises." At the time of the burglary, the evidence shows the victim was required to relocate to a hotel on a temporary basis by the apartment's management because of a fire in a nearby apartment. Therefore, the disaster provision applies, because the victim's apartment was "not occupied" when defendant entered "solely because a . . . disaster caused the occupants to leave the premises."
Defendant complains that the "disaster" provision has never been applied in a published case involving similar facts. However, this provision would essentially be rendered meaningless if we interpreted it in the manner defendant suggests. Our conclusion that the disaster provision applies under the particular facts of this case is supported by the usual justifications for distinguishing between burglary of inhabited and uninhabited buildings. This is because danger of violence and personal injury during a burglary is still present when a resident must leave a home without first being able to remove personal belongings because of a fire or other disaster and then returns to the home to inspect the damage or to retrieve needed personal items. It is simply fortuitous violence did not occur in this case when the victim was escorted to the apartment to retrieve personal items and discovered defendant inside taking full but unlawful advantage of the disastrous circumstances. In our view, it is not legally significant that the apartment building was so badly damaged by the fire that apartment management had temporarily moved the victim to a hotel when the burglary occurred. At that point in time, the building was accessible for the retrieval of personal items contained therein. The victim had not moved out permanently, still considered the apartment his home, and had not yet abandoned it for dwelling purposes.

Exclusion of Evidence
Prior to and during trial, defendant sought to admit testimony by a city building inspector who examined the building on October 24, 2008, the date *973 of the fire. Defendant's counsel told the trial court the inspector would essentially testify he determined the building was uninhabitable as of the date of the fire, even though apartment management was involved in ongoing efforts in the days following the fire to make the building inhabitable. Defendant also sought to admit a "correction notice" prepared by the inspector on October 24, 2008, stating utilities to the fire-damaged building had been disconnected. It also states utilities could not be reconnected until a licensed contractor obtained a building permit, made necessary repairs, and obtained the inspector's approval of the repairs. The trial court ruled this evidence was inadmissible because it was not relevant without "some additional foundation," because the issue of habitability for purposes of determining the degree of a burglary is based on the victim's intent. Defendant contends this evidence was highly relevant to his defense, and the trial court prejudicially erred in not admitting it.
(4) Only relevant evidence is admissible at trial, and trial courts have broad discretion to determine the relevance of proffered evidence. (People v. Weaver (2001) 26 Cal.4th 876, 933 [111 Cal.Rptr.2d 2, 29 P.3d 103].) A trial court's rulings on relevance and the admission or exclusion of evidence are reviewed for abuse of discretion. (People v. Hamilton (2009) 45 Cal.4th 863, 944 [89 Cal.Rptr.3d 286, 200 P.3d 898].)
In our view, the trial court did not abuse its discretion in excluding the building inspector's testimony and the "correction notice" or other similar documentary evidence about the technical status of the victim's apartment from October 24, 2008, the date of the fire, up to and including October 28, 2008, when the burglary occurred. During this time period, the technical status of the apartment building under applicable building codes and regulations was not relevant to whether the victim's apartment was "inhabited" within the meaning of section 459 at the time of the burglary. As outlined above, habitability under section 459 is determined based on the point of view of the victim at the time the burglary takes place. As the trial court noted, defendant did not present any foundational evidence suggesting the victim was even aware of the building inspector's opinion as to the technical status of the building during this time period. Rather, the undisputed evidence shows the victim did not learn he would be unable to resume living in the apartment and would have to move out until several days after the burglary. Thus, the inspector's opinion about the technical status of the apartment could not have had any effect on the habitability of the apartment from the victim's point of view at the time of the burglary, and his testimony would have only served to confuse the jury.

*974 DISPOSITION
The judgment is affirmed.
Hollenhorst, J., and McKinster, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] It was further alleged defendant previously served a prison term within the meaning of section 667.5. However, at the People's request, this allegation was stricken on January 6, 2009.