Filed 4/16/13  P. v. Gallagher CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046475 |
| v. | (Super. Ct. No. 10SF0551) |
| RICHARD FRANK GALLAGHER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson, Stephanie Chow,  and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

After a jury convicted defendant Richard Frank Gallagher of first degree burglary (Pen. Code, § 459; all further statutory references are to this code unless otherwise indicated), the trial court found he had a prior strike conviction (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)), a prior serious felony conviction (§ 667, subd. (a)(1)), and six prior prison term convictions (§ 667.5, subd. (b)). Defendant moved for a new trial based on ineffective assistance of counsel. Following a hearing, the court denied the motion and sentenced defendant to 15 years in state prison.

Defendant appeals from the judgment, contending the court erred in denying his new trial motion and that his first degree burglary conviction should be reduced to second degree because there was no evidence the building he entered was being currently used as a dwelling. Finding no error, we affirm.

FACTS

One morning around 9:20 a.m., sheriff's deputies Theo Wilder and Robert Manche contacted defendant, who was sitting on a retaining wall with a towel wrapped around his bleeding fingers, which he said he had "messed . . . up" on a brick wall. A consensual search of defendant's person, videotaped by equipment on Manche's patrol car, revealed a straw bag with "Costa Rica" written on it, containing three remote controls, six music CDs, a plastic bottle of honey shaped like a bear, and loose coins. Manche found a flashlight and more loose change in defendant's pockets. Defendant was wearing "[a] glass crystal-type thingy" in the shape of a cross hanging from a chain. While talking to defendant, the deputies left to respond to an emergency call.

Also that morning, a gardener notified Sharlene Dennis that her mother's house, located 70 to 80 feet from where the deputies contacted defendant, had been broken into. Dennis had been at her mother's house a few days earlier to pick up some items for her mother, who had recently entered a skilled nursing facility, and remembered

2

locking the door when she left. But upon arriving at the house with her husband sometime around 9:30 a.m., they found the back door ajar and its glass broken. After calling the sheriff's department, Dennis entered the house and found items missing, including an antique clock, the television and DVD player, several remote controls, loose change from a jar found on the floor, her mother's Swarovski crystal cross on a chain, a plastic jar of honey shaped like a bear, and some jewelry.

Manche responded to the burglary report around 10 a.m. Dennis knew defendant because he had done some plumbing work for her mother and showed Manche a letter from defendant to her mother. Manche recognized the name from the letter as the person he had contacted earlier. When Manche asked Dennis if she had lost a bag, Dennis described a missing bag that matched the one defendant had in his possession. The remote control brands missing from the home also matched the ones defendant had inside the bag.

The following day, Wilder went to defendant's residence. Upon searching it, he found the same flashlight defendant had with him the previous day and some coins in a velvet jewelry bag, but did not locate the "Costa Rica" bag, the remote controls, the crystal cross, or the bottle of honey. When Wilder showed Dennis and her husband the jewelry bag and the flashlight, Dennis recognized them as belonging to her mother. Dennis told Wilder the bag usually contained jewelry.

Subsequently, a sheriff's investigator showed Dennis the videotape from Manche's patrol car. Dennis identified defendant in the video, along with several items belonging to her mother including the bag with "Costa Rica" written on it, the flashlight, a few CDs, the jar of honey, the remote controls, and the Swarovski crystal cross.

Defendant chose not testify on his own behalf.

DISCUSSION

*1. Ineffective Assistance of Counsel*

Defendant contends the court abused its discretion in denying his new trial motion. The order is reviewable on appeal where, as here, it is "[u]pon appeal from a final judgment." (§ 1237, subd. (a).) We conclude no abuse of discretion occurred.

Defendant's motion for new trial, brought by new counsel Martin Schwarz, asserted trial counsel was deficient for not discovering and presenting evidence of a bus pass that defendant claimed would have shown he was not at the crime scene at the time of the burglary. In support, a public defender's investigator submitted a declaration indicating she had located a bus pass in defendant's belongings being held by his landlord. Schwarz also attached his own declaration, attesting Orange County Transit Authority personnel had informed him the bus pass was swiped at 7:30 a.m. at a location where it would have taken over 90 minutes to reach the bus stop nearest Dennis's mother's house. According to Schwarz, that established an alibi because the gardeners testified they discovered the break-in sometime between 7 a.m. and 8 a.m. when they arrived at the house.

In opposition, the prosecution submitted a declaration from defendant's trial counsel, Frederick Fascenelli, stating defendant had told him about the bus pass, but when he contacted the landlord, the landlord could not locate it. Fascenelli did not sign the declaration under penalty of perjury because he had been in a rush when he e-mailed it to the district attorney.

At the hearing on the motion, the landlord testified although defendant left some property with him, Fascenelli never asked him about the bus pass. Fascenelli in turn testified defendant told him he had a bus pass and that it could be obtained from his landlord. But when Fascenelli called the landlord, the landlord told him he could not

locate it. Fascenelli neither personally went to the residence to look for the bus pass nor sent an investigator to do so.

The court denied the new trial motion, finding, among other things, defendant had failed to show Fascenelli's performance was deficient or that a ruling more favorable would have resulted had the evidence been presented. It disagreed the bus pass provided defendant with an alibi because there was no evidence he either bought the pass or was actually riding on the bus at the time in question. There was also no evidence when the burglary actually occurred, as the evidence only established it happened sometime between when Dennis was last at the house a few days before and when it was discovered.

We review the court's denial of a new trial motion for abuse of discretion. (*People v. Thompson* (2010) 49 Cal.4th 79, 140.) Ineffective assistance of counsel, if proven, is a valid, nonstatutory ground for a new trial. (*People v. Fosselman* (1983) 33 Cal.3d 572, 582-583) Upon appeal from the denial of such a motion, we apply two distinct standards of review. We defer to the court's factual findings if supported by substantial evidence, but exercise de novo review over the ultimate issue of whether the defendant's constitutional rights were violated. (*People v. Taylor* (1984) 162 Cal.App.3d 720, 724-725.)

To prevail on an ineffective assistance claim, defendant bears the burden of establishing both deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [104 S.Ct. 2052, 80 L.Ed.2d 674].) He must show counsel's representation fell below an objective standard of reasonableness under prevailing professional standards and that there is a reasonable probability that, "'"'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

5

Where an ineffective assistance claim can be resolved solely on lack of prejudice, it is unnecessary to determine whether counsel's performance was objectively deficient. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.) Here, defendant has not proven it was reasonably probable the outcome of the trial would have been different. Without testimony by defendant, which was unlikely in any event because of his numerous priors, the bus pass evidence would not have demonstrated the pass belonged to defendant or that he rode the bus during the time in question. That, along with the evidence defendant knew Dennis's mother, was found 70 to 80 feet from her house shortly after the burglary, was discovered with his fingers bleeding, possibly due to the broken glass, and had several of the items taken from the home in his possession, suggests it is not reasonably probable defendant would have obtained a more favorable result had evidence of the bus pass been admitted.

Defendant also argues the bus pass was newly discovered evidence entitling him to a new trial under section 1181, subdivision (8). But he forfeited the claim by not raising it in his motion for new trial. (*People v. Masotti* (2008) 163 Cal.App.4th 504, 508.) He also failed to establish the newly discovered evidence would have led to a different result. (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) The court thus did not abuse its discretion in denying a new trial.


*2. Substantial Evidence to Support Second Degree Burglary Conviction*

Defendant asserts his conviction for second degree burglary is not supported by substantial evidence because there is insufficient evidence the house was "inhabited" as required by section 460 ["(a) Every burglary of an inhabited dwelling house . . . or the inhabited portion of any other building, is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree"] and section 459 ["As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not"]. He cites Dennis's testimony her 92-year-old mother had fallen and

6

broken her ribs eight days before the burglary was discovered and moved from a hospital to a skilled nursing facility five days later, then to an assisted living facility where she remained until the time of trial because her doctors had stated "she can't live on her own." The contention lacks merit.

As to Dennis's mother's purported inability to live by herself, the record indicates a hearsay objection was sustained. Although the court allowed defendant to rephrase, defendant never did so.

Moreover, "'"[f]or purposes of the California first degree burglary statute, a structure 'need not be occupied *at the time*; it is inhabited if someone lives there, *even though the person is temporarily absent*.' [Citations.] . . . [¶] '[W]e look to the intent of the occupier or person entitled to occupy the dwelling to determine if it is inhabited within the meaning of . . . section 459.' [Citation.]." (*People v. Little* (2012) 206 Cal.App.4th 1364, 1369.) "'A formerly inhabited dwelling becomes uninhabited *only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling. . . .* [¶] . . . [¶] . . . If the person is using the structure as a habitation when the burglary or robbery occurs, his possible intent to abandon the habitation in the future does not alter its character as an inhabited dwelling.' [Citation.]" (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 970-971.)

*People v. Meredith* (2009) 174 Cal.App.4th 1257 and *People v. Marquez* (1983) 143 Cal.App.3d 797 analyze the issue of a property owner not staying at a residence when a burglary occurs. We reject defendant's claim these cases "were wrongly decided on their facts, under the general doctrine discussed above" as he offers no substantive legal analysis, forfeiting the issue. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

In *Marquez*, the owner of the home had been absent from it for over two years, having been confined to a boarding residence. Nevertheless, the owner's conservators and a friend regularly entered the residence in order to maintain it. *Marquez*

7

held the house was inhabited within section 459's meaning despite the owner being away for a long time and the "doubt she [would] return" because "[t]here is no evidence in the record that [the victim] or her conservators acting on her behalf ever vacated or abandoned her residence to live in some other place. The trial court concluded 'that [the victim] has not vacated or abandoned her residence but fully intends to return' and that the dwelling at the time of the burglary was inhabited even though temporarily unoccupied. It is the intent and not the length of absence which controls." (*People v. Marquez*, *supra*, 143 Cal.App.3d at pp. 801, 802.)

In *Meredith*, the elderly owner of a residence went to the hospital and was later transferred to a skilled nursing facility. The owner asked his accountant and long-time friend to care for his home while he was away. During his treatment at the skilled nursing facility, his residence was burglarized and the owner thereafter died while on life support. *Meredith* rejected defense arguments there was no evidence the owner intended to return, the owner could not return after being taken off life support, and there was insufficient evidence the dwelling was inhabited, finding instead there was evidence from the owner's son that the owner wanted things left the way they were because the owner was planning to return. The owner's intent to return coupled with the absence of "evidence that he had moved out or abandoned the intent to return" provided substantial evidence supporting the defendant's conviction for first degree burglary. (*People v. Meredith*, *supra*, 174 Cal.App.4th at pp. 1268-1269.)

Similarly, here, Dennis testified she and her husband "wanted to see how [her mother] recovered from the broken ribs" before making any decision to move her from the skilled nursing facility to an assisted living facility, which they finally decided to do two months after the burglary was discovered. Dennis's husband confirmed they did not have any immediate plans to move his mother-in-law from the skilled nursing facility, but that things changed while she was there.

8

Based on this testimony, combined with evidence the gardener was still attending to the property's landscaping, Dennis was still visiting her mother's house to pick up items, and that all of her mother's property remained in the house (except for the missing items), the jury could have reasonably inferred Dennis's mother did not abandon her home and intended to return.  Substantial evidence supports the jury's finding. (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064 ["Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom"].)

DISPOSITION

The judgment is affirmed.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.

9