Filed 11/18/14  P. v. Ennis CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065940 |
| Plaintiff and Respondent, | (Super. Ct. No. BF134400A) |
| v. | |
| JUSTIN MARK ENNIS, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Catherine Chatman, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant Justin Mark Ennis was operating a vessel while under the influence of alcohol when it struck and killed the operator of another vessel. Ennis challenges his conviction for murder on the grounds the trial court erred in admitting evidence of his prior conviction for driving under the influence (DUI). He also contends prosecutorial misconduct and cumulative prejudice warrant reversal of the conviction. Finally, he contends his misdemeanor conviction for violating Harbors and Navigation Code section 655, subdivision (b) is a necessarily included offense of his felony conviction for violating subdivision (f) of that same code section.

With the exception of Ennis's claim regarding the necessarily included offense, we disagree with his contentions. We will reverse the misdemeanor conviction and in all other respects affirm the judgment.

# FACTUAL AND PROCEDURAL SUMMARY

On August 28, 2010, a group gathered at Lake Webb in Kern County to celebrate Jacob Perez's 12th birthday. Salvador "Sal" Rodriguez and his wife, Mia, were there with their Bayliner boat. Mia was five months pregnant at the time and left the party early at around 3:30 p.m.

Ennis also was at Lake Webb that afternoon with his friends Brent Fletcher, Shelby Rolin, and La'Nae Freeman. Ennis had his mother's boat at the lake and he and his friends were out in the boat with a supply of Bud Light and Corona beer. Everyone was drinking beer and Ennis also was smoking marijuana. According to Freeman, Ennis was drinking beer all day.

Rodriguez remained at the lake after his wife left. He took his then 13-year-old niece Zoey Perez and her 11-year-old friend Irene Salcedo, his friend Julio Camacho, Sr., and Camacho's two children, nine-year-old Julio and 13-year-old Odalys, for a ride in his Bayliner. Zoey asked for a last ride on an inner tube pulled by the Bayliner before the group returned to the birthday party.

Rodriguez was driving the boat; Camacho was watching the inner tube riders and alerting Rodriguez when a rider came off into the water. Irene was holding an orange flag; when a rider came off the inner tube, she held the flag up high until the rider was back in the boat. Everyone wore life jackets.

When Zoey fell off the inner tube, Irene held the orange flag up high, Rodriguez slowed down and turned the Bayliner back to pick up Zoey from the water. When Rodriguez reached Zoey, he followed correct boating procedure and turned the engine off; Camacho put the ladder into the water and helped Zoey onto the Bayliner. Rodriguez asked Zoey to move to the front of the boat, so Camacho could haul the inner tube onto the Bayliner.

At about this time, Ennis headed his boat out of the no-wake zone, and picked up speed as he crossed the buoy line. The people on the Bayliner saw Ennis's boat bearing down on them. Rodriguez tried to get his boat started in order to move out of the way; the others on his boat began yelling and waving their arms to catch Ennis's attention. Ennis's boat, however, kept coming and never turned. Camacho realized Ennis's boat was going to strike them and he threw himself on his son to cover the child.

Ennis's boat struck the Bayliner and actually came over on top of the Bayliner. Ennis's boat then slid off and floated away. Camacho had been hit in the back, but wasn't seriously injured. The children were frightened, but unhurt physically. Rodriguez's head had been crushed between Ennis's boat and another hard surface; Rodriguez was laying unresponsive on the floor of the Bayliner. There was broken glass on the floor of the Bayliner. Camacho could see that Rodriguez was bleeding from his head and having trouble breathing.

No one on the Bayliner had a cell phone and none of the passengers knew how to operate the Bayliner. They began asking the people on Ennis's boat to call 911 and to help them get the Bayliner to the dock. Ennis knew Freeman had a cell phone with her, but Ennis told her not to call 911.

3.

Finally, Ennis boarded the Bayliner and told the passengers he would help them get to the dock, but that they could not call the police. Zoey stated that Ennis told them "if we call the cops, he would kill us." Others confirmed hearing Ennis make this statement.

Ennis took the wheel of the Bayliner, while Fletcher loosely tied the two boats together. Freeman drove Ennis's boat toward the dock. The boats stopped short of the dock, however, and Ennis untied the two boats. Before Ennis's boat got away, Zoey jumped in, grabbed a cell phone, and then jumped in the water and headed for the dock.

Luis Barillas and Juan Madrigal were at the dock taking Madrigal's boat out of the water when they heard a girl screaming. They saw a girl wearing a life jacket, calling for help, and trying to get to the dock. Barillas jumped in to help the girl. The girl pointed at Ennis on the dock and stated that he had hurt one of the people on the Bayliner.

When he got to the dock, Ennis instructed Freeman to get his truck. Someone backed the truck onto the boat ramp and Ennis loaded his boat onto the trailer. Meanwhile, the Bayliner drifted to the dock. Camacho saw that Ennis was about to drive away. Camacho hurried over and took the keys out of Ennis's truck.

Ennis and Fletcher came at Camacho; Camacho threw the keys into the water. Ennis jumped into the water while Fletcher held onto Camacho. Ennis grabbed the keys before they could sink. Ennis hopped into his truck and started to drive away; Barillas was yelling at Ennis not to leave.

While Ennis and Camacho were engaged, Zoey was calling 911 and telling the dispatcher Ennis had struck the boat she was on, injured the driver, and was trying to leave. Zoey was also yelling for people to stop Ennis from leaving. Zoey is also the one who alerted the park rangers. Zoey told Rangers Christopher Gonzales and Anthony Gary that someone had killed her uncle and was trying to get away.

Gonzales could hear other people yelling out that someone in a boat needed help. Gary headed toward the Bayliner and Gonzales went after Ennis's truck. Gary found

4.

Rodriguez on the floor of the Bayliner with a weak pulse and shallow breathing. Gary called for an ambulance and the fire department.

Ranger Daniel Longcrier responded to the scene; he was a trained emergency medical technician. Longcrier detected a faint pulse and respiration, but while he was checking, Rodriguez's pulse and breathing stopped. Longcrier began CPR, without success. Rodriguez died as the result of blunt trauma to his head and neck.

Meanwhile, Gonzales approached Ennis. Gonzales could smell the odor of alcohol coming from Ennis. Gonzales detained Ennis and placed him in a park patrol vehicle. Ennis's passengers all tried to run away, but Freeman and Fletcher were caught. Freeman confirmed that Ennis's boat hit the Bayliner and that Ennis had been drinking all day.

Gary conducted field sobriety tests of Ennis. Ennis's eyes were red and watery; he swayed as he walked and stood; and Gary could smell alcohol on Ennis. Ennis admitted drinking beer all afternoon and smoking marijuana. Gary administered the test using a portable alcohol screening device. At 6:30 p.m., Ennis registered .115; at 6:40 p.m., he registered .118. Ennis was arrested and advised of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. A search of Ennis's boat and truck disclosed numerous empty beer bottles, a small glass smoking pipe, and marijuana.

As Ennis was being transported, he stated that his mother would be mad about the boat. Ennis claimed the Bayliner "came out of nowhere" and he hadn't been going that fast. He couldn't see over the front of his boat because it was too high in the water. Ennis did not ask about any of the people who had been in the Bayliner.

Dr. Kathleen Enstice conducted an autopsy of Rodriguez. Rodriguez's cause of death was blunt trauma to his head and neck. There was no indication that Rodriguez had any alcohol or drug problems, or that alcohol consumption on his part played any role in his death.

A marine accident investigation and reconstruction expert, Wes Dodd, concluded that Ennis was travelling at 15 to 17 miles per hour when he struck Rodriguez's Bayliner.

5.

In his opinion, this was not an appropriate speed and the speed contributed to the collision. Within 100 feet of a swimmer or bather, a boat's speed should be no more than five miles per hour. Dodd opined that Ennis would have been able to see in front of his boat and that the operator of a boat must "maintain a proper lookout" and be alert for any risk of collision. A stopped boat has the right of way.

Weather conditions at Lake Webb at the time of the accident were clear skies, with visibility to 1,000 feet. There were no visual obstacles or smoke in the air. The sun would have been behind Ennis at the time of the collision.

Ennis was charged with six offenses: second degree murder; vehicular manslaughter committed by operating a vessel with gross negligence; operating a vessel while under the influence of alcohol or a drug or a combination of the two; operating a vessel while under the influence of alcohol, a drug, or a combination of the two and proximately causing bodily injury to another; willfully and unlawfully operating a vessel in a reckless manner so as to endanger another; and willfully and unlawfully operating a vessel with a blood alcohol content of .08 or more. It also was alleged that Ennis had suffered two prior convictions; one for assault with a deadly weapon and one for driving under the influence of alcohol or drugs, or a combination of the two.

At trial, the prosecution introduced documentary evidence that Ennis pled guilty on October 2, 2007, to driving while under the combined influence of alcohol and drugs, a violation of Vehicle Code section 23152, subdivision (a). Execution of sentence was suspended and Ennis was ordered to complete a program on drinking and driving.

In 2009, Ennis attended the Special Treatment, Education & Prevention Services (STEPS) program. STEPS is a nonprofit agency providing services for people who have been convicted of a DUI and were referred by a government agency. Ennis attended four classes and three group counseling sessions.

As part of the STEPS program, students are told of the dangers of operating a vehicle while under the influence of alcohol and/or drugs and that killing someone while

operating a vehicle under the influence can result in a murder charge. Ennis acknowledged receiving this information on a response form. Ennis was informed that DUI violations could involve most forms of transportation, including boats and jet skis.

The jury found Ennis guilty of all six counts. After a court trial on the prior conviction allegations, the allegations were found true.

Ennis was sentenced to 15 years to life for the murder conviction. Ennis's aggregate, unstayed sentence was 16 years to life in prison.

## DISCUSSION

Ennis contends the trial court erred in admitting evidence of his prior conviction for DUI because the evidence was not relevant; alternatively, he contends the trial court abused its discretion because the evidence should have been excluded pursuant to Evidence Code section 352 as being more prejudicial than probative. Ennis also contends the prosecutor committed misconduct in closing argument. Ennis also asserts the cumulative effect of these errors warrants reversal of the murder conviction. Lastly, Ennis contends the count 5 conviction is a lesser included offense of the count 3 conviction, and must therefore be reversed.

## I. Prior Conviction Evidence

Ennis contends the trial court abused its discretion in allowing the prosecution to introduce evidence of his 2007 DUI and the STEPS program he attended because it was not relevant to establish any fact at issue in the trial. He also contends that even if relevant, the trial court abused its discretion in finding that any probative value was not outweighed by a substantial danger of undue prejudice. We disagree with both of Ennis's contentions.

### Factual Summary

Multiple exhibits were offered by the People and admitted into evidence: Exhibit No. 2A was a certified record of Ennis's 2007 conviction for a DUI; exhibit No. 3 was the plea form relating to the 2007 conviction; exhibit No. 4 was a copy of the certificate

of completion of the court ordered drinking and driving program; exhibit No. 5 was a copy of Ennis's 2010 driver's license application; exhibit No. 6 was a complaint filed in Marin County in 2006 charging Ennis with a DUI; exhibit No. 7A was a printout of the California Law Enforcement Telecommunications System record showing Ennis's conviction for a DUI. All of these documents were admitted without testimony.

People's exhibits Nos. 9A and 39 were documents pertaining to the STEPS program. One document notified STEPS students that "DUI VIOLATION CITATIONS INCLUDE MOST FORMS OF TRANSPORTATION" and listed boats and jet skis as some of those modes of transportation.

In pretrial motions, defense counsel objected to People's exhibits Nos. 2 through 8 on the grounds of relevance. The trial court determined that exhibits Nos. 2A, 3, 4, and 5 were admissible as they were relevant to establishing implied malice to prove the murder charge. The trial court did indicate that exhibit No. 6 was not admissible at that time; exhibit No. 7 might be duplicative and a ruling on admissibility was reserved.

As to the STEPS materials, defense counsel objected to its admissibility on the grounds the documents were covered by a patient-therapist privilege. Defense counsel raised other grounds for objection as well, but never objected to admission of the STEPS material on relevance grounds. The trial court ruled the STEPS documents were admissible.

At trial, People's exhibits Nos. 2A, 3, 4, 5A, 6, 7A, 9A, and 39 were admitted. The jury was instructed to consider the evidence only for the purpose of deciding the existence of implied malice and/or gross negligence.

### Exhibits Nos. 9A and 39

In this appeal, Ennis challenges the admission of People's exhibits Nos. 2A, 3, 4, 5A, 6, 7A, 9A, and 39 as error because the information was irrelevant. As to People's exhibits Nos. 9A and 39, the STEPS materials, Ennis never challenged the admission of this evidence on relevance grounds in the trial court. Having failed to object on this

specific ground in the trial court, Ennis cannot now raise this issue on appeal as to these two exhibits.  (*People v. Homick* (2012) 55 Cal.4th 816, 867.)

### *Remaining Exhibits*

Evidence is admissible only if it is relevant.  (Evid. Code, § 350.)  All relevant evidence is admissible except as otherwise provided by a statutory or constitutional exclusionary rule.  (See Cal. Const., art. I, § 28, subd. (f)(2); Evid. Code, § 351.)  Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.)  The general test of relevance "'is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.  [Citations.]'  [Citation.]"  (*People v. Bivert* (2011) 52 Cal.4th 96, 116–117.)  However, if evidence leads only to speculative inferences, it is irrelevant.  (*People v. Morrison* (2004) 34 Cal.4th 698, 711.)

A trial court enjoys broad discretion in determining the relevancy of evidence.  (*People v. Cash* (2002) 28 Cal.4th 703, 727.)  We review a trial court's rulings on relevance and the admissibility of evidence for abuse of discretion.  (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 973.)

Ennis appears to contend that none of the evidence demonstrated that when he operated the boat "he *subjectively* understood that the dangerous consequences of the land based conduct also applied to the boating context."  In making this statement, Ennis ignores the evidence.  The STEPS documents informed Ennis that a DUI was use of alcohol and/or drugs and operating a form of transportation, including boats or jet skis.  For Ennis to maintain that he did not understand that drinking and using drugs (marijuana) could affect his operation of the boat is to ignore the information he received in the STEPS program, which specifically informed him otherwise.  The information presented in the STEPS program clearly informed Ennis of the effects of alcohol on one's judgment, reaction time, and motor control.  It also informed Ennis that alcohol affected

muscle control, eye-muscle coordination, distance perception, vision, and ability to respond to stimuli.

As for evidence of prior convictions for DUI, such convictions put individuals "on notice of the consequences of driving with extreme recklessness." (*People v. Moore* (2010) 187 Cal.App.4th 937, 943.) When evidence of a prior DUI is combined with evidence that the person participated in an educational program about drinking and driving, it is even more probative on the issue of that individual's "subjective awareness of the risks of drunk driving." (*People v. Johnson* (1994) 30 Cal.App.4th 286, 292.)

Ennis acknowledged in the documents that being under the influence of alcohol or drugs, or both, would impair his ability to safely drive, and if while under the influence someone were to be killed as a result of his driving, he could be charged with murder. This acknowledgement, along with the STEPS information that his ability to operate a boat would be similarly impaired, demonstrated that Ennis subjectively understood the risk of operating a boat while under the influence of alcohol and marijuana.

The challenged exhibits established that Ennis was aware of the effect imbibing alcohol and using drugs would have on his ability to safely operate a mode of transportation, including a boat. This evidence was relevant as tending to prove implied malice, in other words, that Ennis acted with conscious disregard for human life, which is an element of the second degree murder charge. (*People v. Knoller* (2007) 41 Cal.4th 139, 156; *People v. Olivas* (1985) 172 Cal.App.3d 984, 988.) As such, the trial court did not err in determining the evidence was relevant and therefore admissible.

### *Evidence Code Section 352*

Ennis acknowledges that defense counsel objected to the admission of People's exhibits Nos. 2A and 3 on the grounds their probative value was outweighed by their prejudicial effect; no other exhibits in question were objected to on this ground. A trial court's discretionary ruling on admissibility of evidence under Evidence Code section 352 is not reversed on appeal absent a showing that "'''the court exercised its

discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Ochoa* (2001) 26 Cal.4th 398, 437–438.) No such showing has been made here.

The trial court was well aware of its discretion under Evidence Code section 352 and carefully weighed the admissibility of the evidence. The trial court specifically found that the "probative value at this time outweighs the prejudicial effect" on Ennis. The trial court exercised its discretion to exclude portions of some exhibits on the basis the probative value of the excluded portions was minimal and potentially outweighed by a prejudicial effect. Excluded by the trial court was evidence of Ennis's prior conviction for assault with a deadly weapon or force likely to produce great bodily injury. Having carefully evaluated the evidence proffered by the People, excluded some, and redacted other evidence, it is difficult to say that the trial court acted arbitrarily or capriciously. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1136.)

The jury was specifically instructed as to how to use this evidence; that it could use it only to evaluate whether implied malice was proved. The instruction informed the jury the evidence could not be used to prove Ennis was a person of bad character or that he had a predisposition to commit crimes. Absent evidence to the contrary, and here there is none, we presume the jury understood and followed the trial court's instructions. (*People v. Pearson* (2013) 56 Cal.4th 393, 414.)

As for Ennis's argument that admission of the evidence violated his federal due process rights, he fails to point to any portion of the record where an objection to admission of the evidence on due process grounds was made in the trial court. Generally, federal constitutional error must be raised in the first instance in the trial court or be deemed forfeited. (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1524–1525.)

***Conclusion***

Regardless, admission of the challenged evidence did not cause a miscarriage of justice. (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.) Absent the challenged

11.

evidence, it is not reasonably probable that Ennis would have obtained a more favorable verdict and the evidence is therefore not prejudicial. (*People v. Cox* (2003) 30 Cal.4th 916, 958.) There is ample other evidence tending to show Ennis acted with conscious disregard of human life.

Ennis was an experienced boater at the time of the accident, and had been warned by his mother not to drink alcohol or smoke marijuana before operating the boat. One witness testified that Ennis was operating the boat recklessly before the collision with the Bayliner without regard to the safety of other boaters or swimmers in the area. Passengers on Ennis's boat testified that they could clearly see the Bayliner before the collision.

After the collision, Ennis failed to call 911 for assistance, despite having a cell phone on his boat and the pleas of the passengers in the Bayliner. Ennis threatened Zoey and others if they called the police. Upon getting to the dock, Ennis attempted to flee without offering assistance or calling for help for Rodriguez.

There was ample evidence, other than the challenged exhibits, upon which a reasonable jury could find that Ennis acted with conscious disregard for human life.

## II.     Prosecutorial Misconduct

Ennis contends the prosecutor committed misconduct during rebuttal argument, specifically with two comments he made. This claim is not cognizable on appeal.

### *Factual Summary*

When defense counsel addressed the jury in closing argument, he addressed Ennis's previous DUI conviction and urged the jury to find that boats "are different." In rebuttal, the prosecutor stated:

> "The other thing Counsel said was that this was a boat case and not a car case and that being told by a judge that you shouldn't be driving a vehicle while under the influence is different than a boat. They are different.

12.

"But how did I prove to you that the defendant knew .…"

At this point, defense counsel objected on the basis "That was argument outside the evidence." The trial court sustained the objection and, at the request of the defense, instructed the jury. The trial court's instruction informed the jury that this was "the argument portion of the case" and the jurors were the sole "determiners of what the evidence was when it was introduced and what it stands for."

Defense counsel also argued that it was not foreseeable a person could be killed as the result of the boating accident. In rebuttal, the prosecutor argued that it was foreseeable and Ennis knew what he was doing was wrong. The prosecutor then stated, "He also told us in the STEPS documents that more kids are killed in DUIs than in cribs. We are lucky, he is lucky, that Julio Camacho, Sr., threw his son on the ground. We'd have one more." Defense counsel objected to this comment as appealing to the passion and prejudice of the jury; the trial court sustained the objection, struck the remark, and instructed the jury to disregard the remark.

*Analysis*

Ennis acknowledges that after each remark, defense counsel objected, the trial court sustained the objection, and the jury was admonished. Specifically, he insists the first admonition was insufficient and no admonition could have cured the second remark. Ennis asserts his murder conviction must be reversed as a result. He is incorrect.

Prosecutorial misconduct requires reversal only if it prejudices the defendant. (*People v. Fields* (1983) 35 Cal.3d 329, 363.) As the California Supreme Court has stated:

> "'The applicable federal and state standards regarding prosecutorial misconduct are well established. "'A prosecutor's … intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so "egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"the use of deceptive or

13.

reprehensible methods to attempt to persuade either the court or the jury.”’”’” [Citation.]” (*People v. Navarette* (2003) 30 Cal.4th 458, 506.)

As for the first admonition, Ennis did not seek any additional admonition at trial. The issue of prosecutorial misconduct is forfeited on appeal if not preserved by timely objection and request for admonition in the trial court. (*People v. Chatman* (2006) 38 Cal.4th 344, 385; *People v. Cunningham* (2001) 25 Cal.4th 956, 1000–1001.) Having failed to seek any additional admonition, Ennis cannot now contend the admonition given was inadequate.

Regarding the second remark, we disagree with Ennis’s statement that any harm could not be cured by an admonition. The trial court struck the remark and directed the jury to disregard it. We presume, in the absence of evidence to the contrary, the jury followed the trial court’s admonition and instruction. (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1327–1328.) Ennis has failed to demonstrate otherwise.

We reject Ennis’s assertion that the jury’s request for clarification on the issue of malice aforethought indicates somehow that they disregarded the trial court’s admonition and instruction to disregard the second remark. We view this request for clarification as evidence of the opposite theory—the jury was diligent in making sure it understood the legal concepts on which the trial court had instructed them.

The prosecutor’s remarks were minimal and cured by the trial court’s admonitions. They did not rise to the level of a pattern of egregious conduct warranting a reversal of Ennis’s murder conviction. (*People v. Navarette, supra,* 30 Cal.4th at p. 506.)

## III. No Cumulative Error

Ennis contends that even if the errors he raises in this appeal individually do not warrant reversal of his convictions, the cumulative effect of the errors does. We disagree. We have either rejected Ennis’s claims of error, or found them to be nonprejudicial. We reach the same conclusion with respect to the cumulative effect of any assumed errors. (*People v. Sapp* (2003) 31 Cal.4th 240, 316.)

## IV. Misdemeanor Conviction Must be Reversed

Count 5 charged Ennis with a misdemeanor violation of Harbors and Navigation Code section 655, subdivision (b), which provides:

> "No person shall operate any vessel or manipulate water skis, an aquaplane, or a similar device while under the influence of an alcoholic beverage, any drug, or the combined influence of an alcoholic beverage and any drug."

Count 3 charged Ennis with a felony violation of Harbors and Navigation Code section 655, subdivision (f), which provides:

> "No person shall operate any vessel or manipulate water skis, an aquaplane, or a similar device while under the influence of an alcoholic beverage, any drug, or under the combined influence of an alcoholic beverage and any drug, and while so operating, do any act forbidden by law, or neglect any duty imposed by law in the use of the vessel, water skis, aquaplane, or similar device, which act or neglect proximately causes bodily injury to any person other than himself or herself."

Ennis was convicted of both counts. Ennis contends count 3 is a necessarily included offense of count 5 and, therefore, the count 3 conviction must be reversed. The People agree that count 3 is a necessarily included offense of count 5.

There are two tests for determining whether an offense is a necessarily included offense of another offense:

> "To determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the 'elements' test and the 'accusatory pleading' test) must be met. The elements test is satisfied when "'all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]' [Citations.] Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. [Citations.] [¶] Under the accusatory pleading test, a lesser offense is included within the greater charged offense "'if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' [Citations.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 288–289.)

15.

When comparing the two relevant subdivisions of Harbors and Navigation Code section 655, it is apparent that a person cannot violate subdivision (f) without also violating subdivision (b). Both subdivisions prohibit the operation of a vessel while under the influence of alcohol, a drug, or a combination of both; this is the only element of the subdivision (b) offense. Subdivision (f), however, has the additional elements of doing an act forbidden by law or failing to fulfill a duty imposed by law *and* proximately causing injury. The elements test is satisfied because all of the elements of subdivision (b) are included in the elements of subdivision (f).

"When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) Therefore, the conviction for violating Harbors and Navigation Code section 655, subdivision (b) must be reversed.

## DISPOSITION

The conviction for violating Harbors and Navigation Code section 655, subdivision (b) is reversed. In all other respects the judgment is affirmed. The trial court shall prepare an amended abstract of judgment and forward the same to the appropriate authorities.

_____
Kane, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Detjen, J.

16.