Filed 8/16/21  In re I.J. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re I.J., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B308235 (Super. Ct. No. TJ23612) (Los Angeles County) |
| THE PEOPLE,    Plaintiff and Respondent, v. I.J.,    Defendant and Appellant. | |

Isaac J. appeals an order of the juvenile court sustaining a petition alleging that he had committed first degree residential burglary and second degree burglary of a vehicle.  (Pen. Code, §§ 459, 460.)[1]  The court declared appellant a ward of the court

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

and placed him on home probation.  (Welf. & Inst. Code, § 602, subd. (a).)  Appellant contends that his conviction of first degree residential burglary must be reversed because the evidence is insufficient to show that the dwelling he entered was inhabited.  Appellant argues that we "should modify the judgment to reflect the lesser offense of second degree burglary."  We affirm.

*Facts*

Jammy Banuelos saw appellant and an accomplice (the suspects) open the gate leading to the backyard of a house (the house).  The house was across the street from Banuelos's residence.  After opening the gate, the suspects "disappeared."  Several minutes later, they exited the house through the front door.  The suspects used a coat hanger in an unsuccessful attempt to open the door of a car parked in the house's driveway.  The suspects went back inside the house, exited holding car keys, and entered the car.[2]  They started the engine but could not drive the car because it had a flat tire.  Banuelos testified that the car had been parked in the driveway "for at least a month."

As appellant was committing the burglary, a girl who lived next door also entered the house.  She "left with a backpack full of clothes."  The backpack was open, and the clothes inside were "spilling out."  When the girl entered the house, "she didn't have anything with her."  The girl's mother yelled "that she didn't want stolen stuff in her yard."  The mother "tossed all the stuff that was taken" into the front yard of the house.

---

[2] The trial court inferred "that the keys were obtained somewhere in the house and that the keys [were] used to unlock the car."  Banuelos testified that the doors "were locked because they had to open the car with the keys."

2

Banuelos knew "everyone by face who lived" at the house. The suspects did not live there. Banuelos called 911.

Deputy Jaemes Bermudez responded to the 911 call. He looked inside the car parked in the driveway. The car's interior "appeared to have been ransacked." Bermudez had a telephone conversation with Luz Quinones, whom he identified as "[t]he victim" of a theft. He determined that she was the victim by "running . . . the license plate on the vehicle . . . or through a program that detectives have to provide information for the resident." Quinones was not present when the burglaries occurred.

The content of the telephone conversation with Quinones was not disclosed insofar as it concerned the burglary of the house. As to the burglary of the car, Quinones said "[s]he had left the vehicle locked and secured and the contents in . . . order . . . ." Quinones did not testify.

*Standard of Review*

We ""review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find . . . beyond a reasonable doubt [that the house was inhabited]." [Citations.] [¶] . . . "If the circumstances reasonably justify the [juvenile] court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] . . . [¶] Before the judgment of the [juvenile] court can be set aside for insufficiency of the evidence . . . , it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it.

3

[Citations.]" [Citations.]' [Citation.]" (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994-995.)

*Substantial Evidence Supports Court's*
*Finding that the House Was Inhabited*

Section 460 provides, "Every burglary of an inhabited dwelling house . . . is burglary of the first degree." "'[I]nhabited' means currently being used for dwelling purposes, whether occupied or not." (§ 459.)

"[T]he term "'inhabited dwelling house'" has been given a 'broad, inclusive definition.' [Citation.] Thus, although an inhabited dwelling house is a place where people "'ordinarily live and which is currently being used for dwelling purposes'" [citation], it 'need not be the victim's regular or primary living quarters' in order to be deemed an inhabited dwelling house." (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 317-318.)

"A structure or dwelling 'is "inhabited" if it is currently being used for residential purposes, even if it is temporarily *unoccupied,* i.e., no person is currently present. . . . [¶] . . . [¶] . . .' . . . [T]he Legislature has specifically rejected the view that the use of a dwelling as sleeping quarters is critical. 'Rather, such use is merely one circumstance the fact finder may consider.'" (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 970-971 (*Aguilar*).)

Viewing the evidence in the light most favorable to the judgment, we conclude that a reasonable trier of fact could find beyond a reasonable doubt that the house was inhabited at the time of the burglary. Although the occupants of the house were absent, Banuelos testified that she knew "everyone by face who lived there." She occasionally "said hi and bye [to them]." Banuelos did not testify that the occupants had moved out of the house or had moved their belongings from the house.

4

Even if the occupants had moved out, "'[a] formerly inhabited dwelling becomes uninhabited *only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling. . . .'*" (*Aguilar, supra,* 181 Cal.App.4th at p. 970.) Ample evidence supports the trial court's implied finding that the persons known by Banuelos to have been living at the house had not moved out permanently. The occupants had left clothes inside the house. The clothes must have been in good condition. Otherwise, the girl who lived next door would not have taken them. If the occupants had moved out permanently, it is reasonable to infer that they would have taken the clothes with them.

Moreover, a car was parked in the driveway of the house. The doors of the car were locked. Although the car had a flat tire, it was operable. The suspects retrieved the car keys from inside the house and used them to open the doors and start the engine. It is reasonable to infer that the car belonged to the occupants of the house, who had locked the doors and left the keys inside the residence for safekeeping. It is also reasonable to infer that, if the occupants had moved out permanently, they would not have left the car in the driveway with the car keys inside the house. If they had intended to abandon the car, they would not have bothered to lock the doors.

In his reply brief, appellant asserts that the evidence is insufficient because "the evidence does not establish that a person with a possessory interest in the house either currently inhabited that house or, if temporarily absent, intended to return there." "[T]he prosecution chose not to present a witness with a possessory interest in the house – someone who might have established that the burglarized house was currently inhabited,

5

as required." Appellant notes, "[I]t is not clear that Quinones was even a resident of [the] house." But appellant cites no authority to the effect that, to prove a dwelling house was inhabited within the meaning of section 459, the prosecution must establish the identity of the residents and show that they had "a possessory interest" in the house. In any event, it is reasonable to infer that Quinones resided at the house because she had left the keys to the car inside the house.

Accordingly, "the evidence reasonably supported the [juvenile court's] finding that the [house] was 'inhabited' within the meaning of section 459 at the time of the burglary." (*Aguilar*, *supra*, 181 Cal.App.4th at p. 972.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                    YEGAN, J.

We concur:


        GILBERT, P. J.


        TANGEMAN, J.


6

Melissa N. Widdifield, Judge

Superior Court County of Los Angeles

_____

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Stephanie C. Santoro, Deputy Attorney General, for Plaintiff and Respondent.